Filed 4/10/26  P. v. Viera CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAM VIERA,<br><br>    Defendant and Appellant. | B344152<br><br>(Los Angeles County<br>Super. Ct. No. 24CJCF04575) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette Verastegui, Judge.  Affirmed.
        Daniel Milchiker, under appointment by the Court of Appeal, for Defendant and Appellant.
        Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The trial court denied appellant Sam Viera's motion for mental health diversion. Later he pleaded no contest to one count of assault and admitted that he used a deadly or dangerous weapon during the offense and was sentenced to five years in state prison. He contends the trial court abused its discretion by denying his motion, pursuant to Penal Code section 1001.36, based on a finding he posed an unreasonable risk of danger to public safety if treated in the community. We affirm.

## BACKGROUND

### A.    Current Offense

In a single count information, the Los Angeles County District Attorney charged appellant with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and alleged that he inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)). The information further alleged five aggravating factors (Cal. Rules of Court, rule 4.421) and that appellant had been previously convicted of three serious felonies (§§ 667, subd. (d), 1170.12, subd. (b)).

The incident occurred inside and near the restroom inside a grocery store.[2] The victim was inside of a closed bathroom stall. Appellant slid the blade of a knife through the stall door and stated he was going to kill the victim. The victim waited for appellant to leave before exiting the bathroom. Outside the restroom, appellant approached the victim and struck him with a

---

[1] Undesignated statutory references are to the Penal Code.

[2] As appellant notes, the facts of the offense are not fully adduced in the record on appeal, and we take our account of the circumstances of the charged offenses from the trial court's summary of the victim's preliminary hearing testimony.

knife resulting in a wound to his arm and a puncture wound to his left chest area. The wound was documented in a photograph contained within the police report attached to appellant's motion.

## B. Motion for Mental Health Diversion

### 1. *Moving papers*

Viera filed a motion for mental health diversion pursuant to section 1001.36. He stated he was statutorily eligible and suitable for diversion, based primarily on the information contained in an attached report describing his evaluation by a clinical psychologist.

Regarding whether Viera posed an unreasonable risk of danger to public safety if treated in the community (the only statutory element at issue in this appeal), the psychologist tepidly opined, "[I]f Mr. Viera is receiving treatment, he is less likely to be symptomatic and therefore, is less likely to commit any offenses."

The psychologist reported that "[a]t the time of this offense," Viera "was do[i]ng well" and "was taking his psychiatric medications." Viera reported that he "was receiving mental health treatment from his parole office at [address] and his clinician was Ms. Mills and he received psychotherapy four times per month for eight months, but this was supposed to be for two years." Viera also reported that "[h]e has never attended substance abuse rehabilitation."

The district attorney did not file a written opposition to Viera's motion for mental health diversion but orally opposed the motion at the hearing.

3

## 2. *The Hearing*

At the hearing on the petition, the People argued that appellant was not suitable for mental health diversion. The prosecutor detailed appellant's criminal history, which "included two sustained juvenile petitions for robbery and for 245(a)(1) from 2007 where he got camp placement. When he was an adult in 2011, he was convicted of 245(a)(1) with a gang allegation and received 14 years in state prison. He's on parole from that case when this case was committed, and in the reports, it indicates that he was receiving mental health treatment at the parole office at the time of this crime." The prosecutor also argued, "[B]ased on his record and based on his conduct in this case where he threatened victim with a knife and then stabbed him in the chest right at his heart, piercing the subcutaneous fat in his chest right by his nipple, with no provocation at all. [¶] . . . That he stabbed somebody right at his heart in this particular case shows that the risk of him committing a super strike of murder is . . . definitely a reasonable conclusion . . . ."

The defense responded by "tak[ing] exception" with the prosecution's characterization that the attack was unprovoked. The defense attorney also pointed out that the attack happened with a butter knife, and additionally added, "I don't believe the people have presented actually any evidence per se to overcome the doctor's opinion. Submitted."

The trial court denied the diversion motion, because it was "not satisfied that the defendant will not pose an unreasonable risk of danger to public safety. . . if treated in the community." The court stated that it based its findings on its review of the preliminary hearing transcript, and found that "the knife attack, which really does seem unprovoked in the sense that there's two

4

grown men outside of a restroom, trying to go in and use the restroom – it seems completely unnecessary." The court concluded that Viera was the initial aggressor, the attack was unprovoked, Viera repeatedly threatened to kill the victim, and stabbed him near a vital organ, specifically, the chest and heart area. The court noted, in determining the risk of danger, it had considered the information in the defense motion, the arguments by the district attorney, the qualified medical expert opinion as to whether the defendant is a risk for future assaults, the defendant's history of violence and criminal history, [and] the facts of the current charged offense." The court observed that Viera had recently been released from state prison for an assault "very similar to this one." The court also noted that the documents provided by the defense (presumably referencing the doctor's report) established that at the time of the offense, Viera was on parole and was receiving mental health medication and treatment, "so the fact before the court is that even under [the] controlled circumstance of having medication and being under the supervision of parole officers, he was still, nonetheless, capable and attacked another individual with a knife." Defense counsel did not at any time attempt to correct the court's understanding or offer a different interpretation of the content in the psychologist's report describing Viera's mental health treatment while on parole.

Viera obtained a certificate of probable cause and timely appealed.

## DISCUSSION

Viera contends the trial court abused its discretion in denying his motion for mental health diversion based on the

5

finding he would pose an unreasonable risk of danger to public safety if treated in the community. Because we conclude the court's finding is supported by substantial evidence, we reject Viera's contention.

## A.    Legal Principles Regarding Diversion and Standard of Review

Diversion under section 1001.36 "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court of San Diego County* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).) One of the purposes of the legislation is "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety." (§ 1001.35, subd. (a).)

"[M]ental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program. The criteria for each are specified in the statute. (§ 1001.36, subds. (b) & (c).) Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged. (*Id.*, subd. (b).) They are suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv). (§ 1001.36, subd. (c).)" (*Sarmiento*, *supra*, 98 Cal.App.5th at p.

6

891.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).)

This appeal concerns only the fourth suitability criterion listed above—no unreasonable risk of danger to public safety. Unreasonable risk of danger to public safety means "a likelihood that if the defendant is granted diversion, [he or] she will commit one of the 'super strike' violent felonies enumerated in section 667, subdivision (e)(2)(C)(iv)." (*Sarmiento, supra,* 98 Cal.App.5th at p. 895; *Moine, supra,* 62 Cal.App.5th at pp. 449-450.) "Those super strikes are murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, any serious or violent felony punishable by death or life imprisonment, or any sexually violent offenses or sexual offense committed against minors under the age of 14." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1150-1151 (*Whitmill*).)

In deciding whether a defendant poses an unreasonable risk of danger to public safety, the "court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).) A trial court may "rely[] primarily, or even entirely, on the circumstances of the charged offense or offenses" in finding a defendant unsuitable for diversion. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 862.) We review a trial court's finding that a defendant poses an

7

unreasonable risk of danger to public safety for substantial evidence. (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 897; *Whitmill*, *supra*, 86 Cal.App.5th at p. 1150.)

## B. Substantial Evidence Supports the Trial Court's Finding That Viera Posed an Unreasonable Risk of Danger to Public Safety If Granted Diversion

Viera argues there was no evidence presented to rebut the psychologist's conclusion that while receiving treatment in the community he would not pose a danger of committing a super strike. But that was not the psychologist's conclusion. The psychologist concluded that "[I]f Mr. Viera is receiving treatment, he is less likely to be symptomatic and therefore, is less likely to commit any offenses." Viera concedes that the court correctly recited Viera's criminal history, but states the court failed to recognize the connection between Viera's criminal history and mental health issues. Viera states that the psychologist recognized that Viera had never received substance abuse treatment and his parole-ordered treatment had lapsed and claims "no evidence was presented to question or contradict the doctor's opinion." Viera states that the court's finding was "contrary to the evidence provided by [the psychologist], who stated that appellant had never received treatment and that his parole ordered treatment had lapsed."

The psychologist's report contains substantial evidence of the court's findings. While the report does say in one section that the defendant reports he never received treatment, in another section titled "Relevant history" which notes "The following information in this section was obtained by the defendant," the report states the defendant "was receiving mental health

treatment from his parole office at [address] and his clinician was Ms. Mills and he received psychotherapy four times per month for eight months, but this was supposed to be for two years." On appeal, Viera appears to be arguing this sentence in the report means that Viera was no longer receiving mental health services through parole, inferring that psychotherapy was the *only* mental health service Viera was being provided, which was supposed to last for two years and had lapsed at the time of the crime. However, a more reasonable interpretation of that sentence is that Viera was receiving various mental health services through parole, and only the psychotherapy component had lapsed, with any other mental health services remaining ongoing. This is supported by the reference in the psychologist's report to Viera being on his psychiatric medications at the time of the offense, as the prescribing of psychiatric medications is clearly part of a course of mental health treatment. This appears to be the way the trial court interpreted the sentence in the report, it is the most reasonable interpretation of that sentence, and the defense did not dispute or attempt to rebut the trial court's interpretation at the hearing.

The foregoing facts constitute substantial evidence supporting the trial court's finding there was a likelihood Viera would commit a super strike offense if granted diversion. Substantial evidence shows Viera was obtaining mental health treatment in the community at the time he stabbed a man near the heart during an unnecessary conflict over a bathroom stall. Viera's violent criminal history, and the fact that Viera was in fact being treated in the community at the time he stabbed the victim near the heart support the trial court's finding that he

9

posed an unreasonable risk of danger to public safety if granted diversion.

Viera has not demonstrated error. Accordingly, we affirm the judgment.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.